# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
**Eastern Division at Columbus**

Case No. __________

COMPLAINTS FOR WRONGFUL DEATH,

DAMAGES AND CIVIL RIGHTS VIOLATIONS

JURY TRIAL DEMANDED

Donna White

5604 Kingsway Court

Cincinnati, Ohio 45215

Plaintiff

VS

Ross Correctional Institution

William Bill Cool

Cindy Miller

Correction Officers, John and Jane Doe 1-20,

Medical Staffs, John and Jane Doe 1-5

EMS Staffs, John and Jane Doe 1-4

All Defendants are located at

Ross Correctional Institution

P.O. Box 7010, 16149 State Route 104, Chillicothe, Ohio 45601

**Jurisdiction & Venue**

Filed in the U.S. District Court for the Southern District of Ohio.

Federal jurisdiction under 42 U.S.C. § 1983 and supplemental state law claims.

**Parties**

Plaintiff Donna Marie White is the duly appointed Administrator of the Estate of Dennis James Nelson Jr., with authority over medical and related estate matters as of September 8, 2024, pursuant to the order of the Hamilton County Probate Court. Her application for full administrative authority over the Estate is pending and expected to be granted. She brings this action in her representative capacity on behalf of the Estate and the statutory next of kin of Dennis James Nelson Jr.

vs

Defendants: Ross Correctional Institution, Warden William Cool, unnamed correctional officers and medical staff (John Does 1–10).

## INTRODUCTION

This is a civil rights and wrongful death action arising from the in-custody death of Dennis J. Nelson Jr. at Ross Correctional Institution. Plaintiff Donna Marie White brings this action under 42 U.S.C. § 1983 and Ohio state law to seek justice for the gross misconduct, abuse, and deliberate indifference shown by prison officials and medical staff.

## JURISDICTION AND VENUE

"These claims arise from events that occurred at Ross Correctional Institution in Chillicothe, Ohio, where the decedent was confined under state authority."

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343 because it arises under the laws of the United States.
2. This Court has supplemental jurisdiction over state law claims under 28 U.S.C. § 1367.
3. Venue is proper in this District under 28 U.S.C. § 1391(b) because the events giving rise to the claims occurred in this District.

## PARTIES

4. Plaintiff Donna Marie White is the mother of Dennis J. Nelson Jr. and the Administrator of his Estate as of September 8, 2025. "She brings this action in her representative capacity on behalf of the Estate and the statutory next of kin of Dennis J. Nelson Jr.".
5. Defendant Ross Correctional Institution (RCI) is a state correctional facility located in Chillicothe, Ohio.
6. Defendant William Cool was the Warden of RCI during the events in question.
7. Defendant Cindy Miller Nurse Supervisor, John or Jane Doe's 1–20 include unknown correctional officers, medical staff, and other RCI personnel, several John and Jane Doe's EMS, involved in the wrongful acts described herein. Their identities will be substituted when known.

## FACTUAL ALLEGATIONS

***Count I – Failure to Administer Prescribed Medication and Deliberate Indifference***

**Overview of Deliberate Indifference to Medical Needs This section outlines Ross Correctional Institution's refusal to administer Dennis J. Nelson Jr.'s prescribed medication, despite full documentation and coordination with his treatment team. Staff prioritized cost over care, substituted ineffective alternatives, and ignored warnings about adverse effects. These actions reflect deliberate indifference to Dennis's serious medical needs, violating his Eighth Amendment rights.**

8. On May 29, 2024, the day before Dennis J. Nelson Jr.'s birthday, he was transferred to Ross Correctional Institution. Plaintiff Donna Marie White immediately contacted the medical department to ensure Dennis's prescribed medication order was properly received and to provide a detailed overview of his mental health history, symptoms, and care instructions. The medical staff initially responded with warmth and professionalism, offering Plaintiff a direct cell phone number and email address to facilitate communication between Ross and Dennis's treatment team in Cincinnati.

9. Despite this initial cooperation, Ross Correctional Institution had no medical history or medication orders lined up for Dennis upon his arrival, a clear red flag. Plaintiff promptly contacted Dennis's medical team at Greater Cincinnati Behavioral Health (GCB) and successfully coordinated the transmission of his active medication order. Dennis's Nurse Practitioner released the necessary documentation and instructions to Ross staff. Their refusal, despite full documentation and explicit

instructions to Ross staff. Their refusal, despite full documentation and explicit warnings, constitutes deliberate indifference to serious medical needs in violation of the Eighth and Fourteenth Amendments."

10. On May 30, 2024, Dennis informed Plaintiff that Ross Correctional staff had refused to administer his prescribed injection, despite receiving the order. Plaintiff followed up with both the medical team and the Warden's office, but the initial enthusiasm and cooperation had evaporated. Staff became evasive and ultimately refused to administer the injection, offering only a pill-based alternative that Dennis had previously tried and found ineffective and harmful. Plaintiff and Dennis both clearly explained that the pills had a reverse effect, worsening his psychosis and triggering adverse reactions. Ross staff ignored his warnings, disregarded his medical history, and failed to provide the treatment he had safely received for over four years.

11. This refusal to administer medically necessary treatment—despite full documentation, direct coordination with his providers, and Plaintiff's repeated advocacy—constitutes deliberate indifference to serious medical needs, in violation of Dennis's Eighth and Fourteenth Amendment rights.

12. Health (GCB) promptly transmitted Dennis's longstanding medication order, a prescription he had been receiving consistently for the past four years.

13. When Plaintiff followed up, she was told by the Warden's Assistant that the medication was "too expensive" and that Ross would instead provide an alternative. Plaintiff and Dennis both explained that the pill-based alternatives had previously been trialed and proven ineffective, triggering adverse effects and worsening Dennis's psychosis. Ross Correctional Institution's refusal to honor the medically necessary prescription—despite full documentation and warning constitutes deliberate indifference and medical neglect.

14. Despite full documentation and warnings, Ross Correctional Institution refused to administer the prescribed medication, citing its cost—$1,700.00 every two months—as the reason for denial. This decision prioritized budgetary concerns over Dennis's health and safety, constituting deliberate indifference and medical neglect.

Estelle v. Gamble, 429 U.S. 97 (1976) — establishes that deliberate indifference to serious medical needs of prisoners violates the Eighth Amendment.

Farmer v. Brennan, 511 U.S. 825 (1994) — defines deliberate indifference as conscious disregard of a known, excessive risk to inmate health or safety.

Terrance v. Northville Reg'l Psychiatric Hosp., 286 F.3d 834 (6th Cir. 2002) deliberate indifference claim allowed where staff ignored serious medical symptoms.

Comstock v. McCrary, 273 F.3d 693 (6th Cir. 2001) Sixth Circuit emphasizes subjective awareness of risk and failure to act as proof of deliberate indifference.

Blackmore v. Kalamazoo County, 390 F.3d 890 (6th Cir. 2004) clarifies that obvious medical needs (even without expert testimony) can prove constitutional violation.

"By denying medically necessary treatment for non-medical reasons, Defendants acted with deliberate indifference to Dennis J. Nelson Jr.'s serious medical needs, in violation of 42 U.S.C. §1983 and the Eighth and Fourteenth Amendments to the United States Constitution."

***Count II–IV – Constitutional Violations***

**Overview of Due Process Violations The following events demonstrate Ross Correctional Institution's failure to provide basic procedural safeguards and truthful reporting regarding Dennis's condition. Contradictory wellness check responses, concealment of his whereabouts, and denial of family access reflect a systemic disregard for Dennis's Fourteenth Amendment right to due process and Plaintiff's right to meaningful participation in decisions affecting her son's welfare.**

15. Plaintiff maintains a documented history of phone calls from Dennis, spanning from 7:30 a.m. until 2:00 a.m., during which Dennis would call continuously throughout the day to avoid interacting with the general population. These calls reflected Dennis's escalating fear, isolation, and desperation. Plaintiff observed signs that Dennis was being bullied and extorted for his commissary funds, forcing her to send money daily to protect him from harm.

16. "Dennis described the environment as one of orchestrated violence and psychological torment, akin to a survival scenario where staff permitted or encouraged inmate-on-inmate aggression."

DeShaney v. Winnebago County Dept. of Soc. Servs., 489 U.S. 189 (1989) — establishes limits of state duty, but forms basis for "state-created danger" exception.

Kallstrom v. City of Columbus, 136 F.3d 1055 (6th Cir. 1998) Sixth Circuit recognizes "state-created danger" when state actions place an individual in danger with deliberate indifference.

Stemler v. City of Florence, 126 F.3d 856 (6th Cir. 1997) liability found when officials knowingly expose an individual to danger.

Powers v. Hamilton County Pub. Defender Comm'n, 501 F.3d 592 (6th Cir. 2007) discusses due process violations through systemic neglect.

"By concealing Dennis's whereabouts, falsifying wellness reports, and disregarding Plaintiff's repeated warnings, Defendants deprived both Dennis and his family of fundamental due process protections under the Fourteenth Amendment and created a state-created danger in violation of 42 U.S.C. §1983."

***Count V – Failure to Train and Supervise***

**Overview of Supervisory Negligence Ross Correctional Institution's leadership, including Warden William Cool, failed to train, supervise, and discipline staff responsible for Dennis's care and safety. The repeated misconduct, medical neglect, and coordinated violence described herein reflect a systemic breakdown in oversight. These allegations are brought under 42 U.S.C. § 1983 and rest on established supervisory-liability principles recognized by the United States Court of Appeals for the Sixth Circuit (see, e.g., Sixth Circuit decisions addressing failure-to-train and supervise claims in custodial settings). These failures enabled constitutional violations and contributed to Dennis's death, supporting Plaintiff's claim against supervisory officials. psychological torment, and institutional cruelty.**

17. On July 7, 2024, while in population, Ross Correctional Officers intentionally sent an inmate to fight Dennis. Witness stated Dennis was afraid to fight, but he defeated the inmate and both individuals were held for two days.

18. Upon release on July 9, 2024, Correction Officers deliberately sent the same inmate—along with two others—to physically assault Dennis. As a result of this coordinated attack, Dennis sustained a burst eye vessel (black eye), a fractured nose, and a dislocated arm. These injuries were inflicted under the supervision and with the facilitation of state actors, constituting excessive force, cruel and unusual punishment, and a gross violation of Dennis's constitutional rights.

"These failures demonstrate deliberate indifference to the constitutional rights of inmates and are actionable under 42 U.S.C. § 1983."

Hope v. Pelzer, 536 U.S. 730 (2002)

Court: United States Supreme Court

Citation: Hope v. Pelzer, 536 U.S. 730 (2002)

Facts: Larry Hope, an Alabama inmate, was handcuffed to a "hitching post" for hours in the sun without water or bathroom breaks. Guards taunted him and ignored his pleas.

***Count VI – Wrongful Death***

**"Defendants' deliberate indifference to Dennis J. Nelson Jr.'s medical and safety needs, including deprivation of medication, confinement in extreme heat, and repeated assaults, directly and proximately caused his death. These acts constitute wrongful death under Ohio Rev. Code § 2125.01, for which Plaintiff, as Administrator of the Estate, seeks full damages on behalf of his statutory next of kin. "These facts support Plaintiff's claim for wrongful death under Ohio law, brought on behalf of Dennis's statutory next of kin.**

**Ohio wrongful-death and custodial-negligence decisions recognizing liability when state actors cause an inmate's death.**

19. From July 9, 2024, until his death, Dennis J. Nelson Jr. was repeatedly pepper sprayed by Correction Officers at Ross Correctional Institution. Medical records later confirmed a diagnosis of Oleoresin Capsicum Poisoning and blunt force trauma. During this period, officers shut off Dennis's water system, leaving him confined in a brutally hot holding cell for prolonged hours without relief. Eventually, both of Dennis's eyes were swollen shut. (See medical records and still photo exhibits.)

20. On multiple occasions during late night and second shift, Dennis was removed from the holding cell and escorted to undisclosed locations. However, the available

video footage never shows Dennis being returned, nor does it document his physical condition, raising serious concerns about off-camera abuse and concealment.

21. On July 11, 2024, Plaintiff called Ross medical staff to explain holding Dennis in a brutally hot cell, with no air conditioning system, and without his proper medication was detrimental to his mental and overall health. Plaintiff requested a wellness check due to not hearing from Dennis. Initially, the staff claimed Dennis had been seen and was "fine." However, after a 20-minute conversation discussing Dennis's condition and medication, after Plaintiff noticed and asked why the staff were on a defense. The staff reversed course, stating, "I didn't see Dennis—he's not my patient." This contradiction further undermines the credibility of Ross's internal reporting.

22. On July 13, 2024, Ross Correctional Institution initiated a facility-wide lockdown following the murder of an inmate by Correction Officers. That same night, Dennis appeared in a distressful dream to both Plaintiff and his sister, saying, "Mom, come and get me." He revealed to his sister that he was already deceased. The dream prompted Plaintiff to call the Sheriff's Department and request another wellness check. The Sheriff never laid eyes on Dennis, instead accepting a verbal report from Correction Officers.

23. On July 19, 2024, the day Dennis should have been released from the holding cell, Plaintiff again contacted Warden's office. The Warden's secretary claimed Dennis had been given "several more days" in isolation due to his allegedly destroying the sink and toilet on July 13. (See medical exhibit and photo of water system.)

24. On July 22, 2024, after she received a ton of excuses, she finally sent Ross Correctional Institution an email and cc: Dr. Angela Harper, requesting Dennis's transfer to Cincinnati, to Summit Behavioral Center; due to medication deprivation and confinement in a brutally hot-holding cell. She warned that what Ross called "treatment" was in fact abuse. (See email exhibit dated July 22, 2024.)

25. On July 23, 2024, at approximately 2:15 p.m., Warden William Cool phoned Plaintiff to inform her that Dennis had been found unresponsive and deceased inside a holding cell.

25. At 7:45 a.m. the following morning, Plaintiff called Warden's office to inquire about the transport of Dennis's body to Cincinnati. The Warden's Assistant stated, "We sent his body to Montgomery County at 4:30 a.m. for an autopsy." Plaintiff responded, "I did not authorize an autopsy, nor was I informed." The Assistant replied, "This was protocol, since Dennis was in custody." Plaintiff explained that under Ohio law, Power of Attorney terminates upon death, and as Dennis's next of kin, she had the legal right to decide what happened to his remains.

26. Montgomery County did not begin the autopsy until 8:30 a.m., leaving ample time to honor Plaintiff's request to halt the procedure. Her plea was ignored, and the autopsy was performed without consent—an act Plaintiff believes was intended to conceal institutional wrongdoing.

***People v. Kingsley, No. 2025-CR-00421 (N.Y. Sup. Ct., Oneida Cty.)***

***State of Wisconsin v. Randall Hepp, Case No. 2024CF000123 (Dodge County, WI)***

***"Defendants' conduct was willful, wanton, and reckless, justifying compensatory and punitive damages."***

***Count VII – Intentional Infliction of Emotional Distress***

**As a direct result of Defendants' actions and concealment—including the denial of medical care, orchestrated assaults, and unauthorized autopsy—Plaintiff suffered severe emotional distress. Defendants' conduct was extreme and outrageous, exceeding all bounds of decency, and intentionally or recklessly caused profound psychological harm.**

**Institution and its staff. The deliberate refusal to administer Dennis J. Nelson Jr.'s prescribed medication, the orchestrated assaults, the prolonged confinement in a brutally hot cell, and the systemic neglect leading to his death inflicted ongoing psychological harm.**

**This trauma was compounded by the unauthorized autopsy, the concealment of Dennis's true condition, and the horrifying state of his body upon viewing—bugs and worms crawling on his skin, peeling flesh, and signs of torture. The manipulation of vital records, contradictory autopsy findings, and fraudulent certification further exacerbated Plaintiff's suffering, leaving her to navigate a maze of institutional obstruction while grieving the brutal loss of her son.**

**Plaintiff's emotional distress is not speculative—it is documented through her communications, advocacy efforts, and the timeline of events. The Defendants' conduct was extreme and outrageous, going beyond all bounds of decency, and was intended to cause, or recklessly disregarded the likelihood of causing severe emotional harm. "Plaintiff's emotional distress is severe and ongoing, warranting compensatory and punitive damages."**

**Ohio and Sixth Circuit rulings discussing the elements of intentional infliction of emotional distress in custodial or wrongful-death contexts.**

27. On July 25, 2024, Plaintiff and her family viewed Dennis's body and witnessed horrifying conditions: bugs and worms crawling on his body, a foul stench, peeling skin, and the amputation of one finger. Forensic indicators revealed signs of torture and severe abuse. Dennis weighed 264 lbs. on July 7, 2024, yet the autopsy recorded his weight as 206 lbs.—a 58-pound loss in less than two weeks. These findings strongly suggest Dennis had been deceased for 7–10 days, not the 2 days claimed by Ross Correctional Institution.

**Count VIII – Conspiracy to Cover Up Wrongful Death**

**"Defendants engaged in a coordinated effort to conceal the true circumstances surrounding the death of Dennis J. Nelson Jr. by redacting and withholding critical video evidence, providing inconsistent statements, and obstructing public-records disclosures. These actions constitute a conspiracy to deprive Plaintiff of access to the truth and to obstruct justice, in violation of 42 U.S.C. §1983."**

28. After filing a FOIA request, Ross Correctional responded in March 2025 with bare-minimum, redacted, audio-free footage. The videos show Dennis being escorted from his holding cell during odd hours, including daytime footage of him being led to undisclosed locations. Critically, the footage does not show Dennis being returned, nor does it document his physical condition. The absence of return

footage and concealment of Dennis's status raise grave concerns of custodial abuse, medical neglect, and deliberate cover-up.

29. After the long-awaited FOIA request, Plaintiff filed a Public Record Complaint with the Courts of Claim. Ross Correctional Institution claimed they sent body cam videos in June 2025

30. On a conference call with the Courts, Plaintiff explained how their email was vague without explanation and the redacted videos that Plaintiff received in March 2025, was blurry, with no audio —under court order— the Special Master request for them to resend the redacted body cam video from July 23, 2024, the alleged date of death, to both the Plaintiff and the Court,.

31. After the courts reviewed the body cam videos from July 23, 2024, where you could clearly here the inmates witness and yelling "they killed him, they deprived him of water and beat him" Inmate witnesses later described officers staging a CPR scene after Dennis had already died. The Special Master denied Ross Corrections Motion to dismiss and order them to release unredacted bodycams and video surveillance footage from July 7 to July 23, 2024, giving them 30 days with an extra 10 days to produce.

32. Plaintiff possesses both audio recordings and written communications from Dennis in which he explicitly states that he feared his life and believed he was being targeted while in custody. These statements reflect Dennis's awareness of escalating threats, institutional hostility, and the failure of Ross Correctional staff to protect him from harm. The recordings and writings are direct evidence of Dennis's deteriorating mental and physical condition, his pleas for help, and the systemic indifference that ultimately led to his death.

"Defendants' coordinated concealment, including suppression of unredacted video and misleading communications, directly obstructed Plaintiff's ability to seek redress and violated her Fourteenth Amendment rights to due process and access to the courts."

**Count IX – Fraudulent Certification, Contradictory Autopsy Findings, and Concealment of Cause of Death**

**"The official death certificate and autopsy report for Dennis J. Nelson Jr. contain material inconsistencies, omissions, and irregular signatures that**

**undermine their credibility. Despite visible trauma and forensic indicators of abuse, the cause of death was listed as 'undetermined.' The subsequent alterations and delayed certification constitute concealment and fraud intended to obscure the true cause of death."**

33. Plaintiff asserts that the death certificate issued for Dennis J. Nelson Jr. was fraudulently signed and medically inconsistent with the physical evidence, forensic indicators, vital signs, pictures from Adena Hospital, Montgomery County Corner, and Plaintiff personal pictures taken at the Funeral Home and documented timeline of events. The certificate listed the cause of death as "undetermined," a classification typically reserved for decomposed bodies or cases lacking sufficient forensic clarity. However, Dennis's body was not decomposed—it was badly beaten but clearly recognizable, with visible signs of trauma, swelling, and injury.

34. The death certificate was signed by Dr. Benjamin Trotter, who failed to include a date on the original certification. After Plaintiff raised concerns, Dr. Trotter electronically re-signed the autopsy report twice, correcting his signature without explanation. These irregularities raise serious concerns about the authenticity, accuracy, and integrity of the official documentation.

35. The autopsy findings also contradict the physical evidence observed by Plaintiff and her family. On July 25, 2024, Dennis's body showed:

Bugs and worms crawling on his body

A foul stench

Peeling skin

Amputation of one finger

Severe weight loss: Dennis weighed 264 lbs. on July 7, 2024, but the autopsy recorded 206 lbs., indicating a 58-pound loss in less than two weeks

These indicators suggest Dennis had been deceased for 7–10 days, not the 2 days claimed by Ross Correctional Institution. The forensic vitals and visible trauma point to torture and prolonged abuse, not an ambiguous or natural death.

36. Under Ohio Administrative Code Rule 3701-5-07, a death certificate must be filed promptly, and if the cause of death is unknown, it may be listed as "pending" temporarily. Once determined, a supplementary medical certification must be filed within six months. In Dennis's case, the "undetermined" finding was not supported by the available evidence, and the lack of transparency and signature manipulation by Dr. Trotter constitutes fraud, concealment, and obstruction of justice.

37. In a recorded conversation, Attorney Nicholas DiCello, a licensed legal professional, stated that Dennis vitals showed he was deprived of water, and his sodium levels were extremely high. it is "very rare to receive an undetermined autopsy"—especially when the body is not decomposed and there is visible trauma. Dennis J. Nelson Jr.'s body was recognizable, badly beaten, and showed clear forensic signs of abuse. The classification of his cause of death as "undetermined" is medically and legally suspect and further supports Plaintiff's assertion that the autopsy was used to conceal the true cause of death concealment, and obstruction of justice.

Preservation of Additional Evidence Plaintiff has preserved additional exhibits, recordings, and documentation relevant to the claims herein. These materials will be produced during discovery or upon court order, including full-length audio recordings, unredacted video footage, and supplemental medical and forensic records.

**Signature manipulation, delayed certification, and contradictory findings support Plaintiff's claim that the autopsy was used to obscure the true cause of death and protect institutional actors from accountability.**

**"Such conduct constitutes fraudulent concealment and obstruction of justice under color of state law, actionable pursuant to 42 U.S.C. §1983 and applicable Ohio statutes."**

**CLAIMS FOR RELIEF**

**1. Hold the Defendants accountable** for violation of Dennis's constitutional rights- including:

- 42 U.S.C. § 1983 – Eighth Amendment – Deliberate Indifference to Medical/Mental Health Needs
- 42 U.S.C. § 1983 – Fourteenth Amendment – Violation of Substantive and Procedural Due Process
- 42 U.S.C. § 1983 – 42 U.S.C. § 1983 – State-Created Danger Doctrine
- 42 U.S.C. § 1983 – Conspiracy to Cover Up Wrongful Death
- Wrongful Death – Ohio Rev. Code § 2125.01
- Intentional Infliction of Emotional Distress
- Failure to Train and Supervise (Against Supervisors and Warden)
- Public Records Act Violation – ORC § 149.43
- Ohio Public Records Act Violation – ORC § 149.43
- ADA violations: Failure to accommodate his mental health disability.

**PRAYER FOR RELIEF**

As a pro se litigant and Administrator of the Estate of Dennis J. Nelson Jr., Plaintiff respectfully requests the following relief:

A. Award compensatory damages for the suffering, loss and harm caused ( in an amount to be determined at trial).

B. Award punitive damages against individual Defendants for reckless and malicious conduct.

C. Award attorney's fees and costs pursuant to 42 U.S.C. § 1988.

D. Grant injunctive or declaratory relief as appropriate.

E. Award any other relief as the Court deems just and proper.

F. Plaintiff seeks injunctive relief requiring Defendants to release and preserve full body-camera recordings, facility surveillance, EMS video, and medical footage related to the death of Dennis J. Nelson Jr.

Verification I, Donna Marie White, declared under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on this 31th day of October 2025.

Respectfully submitted,

/s/ Donna Marie White

Pro Se Plaintiff

5604 Kingsway Court

Cincinnati, Ohio 45215

513-832-9448

donnawhite@consultant.com

Exhibit Index

Donna Marie White v. Ross Correctional Institution et al. Filed in support of Complaint under 42 U.S.C. §1983 Date: October 23, 2025

Exhibit No. Description

Exhibit #1 Death Certificate – Dennis J. Nelson Jr.

Exhibit #2 Authority Form – Donna Marie White (Next of Kin / Legal Representative)

Exhibit #3 Declaration of Donna Marie White (Rebuttal to Ross Correctional Institution's Court of Claims Response)

Exhibit 4 – Declaration of Donna Marie White

Rebuttal to Ross Correctional Institution's Motion to Stay Proceedings (Ohio Court of Claims Case No. 2025-00474PQ)

EXHIBIT #1 Dennis J. Nelson, Death Certificate

#8-I

Ohio Department of Health
VITAL STATISTICS
CERTIFICATE OF DEATH

Primary Reg. Dist. No. 7100
Registrar's No. 7100-2024[illegible]
State File No. 2024074035

| | | |
|---|---|---|
| 1. Decedent's Legal Name: DENNIS NELSON | 2. Sex: MALE | 3. Date of Death: JULY 23, 2024 |
| 4. Social Security Number: 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 | 5a. Age (Years): 26 | 6. Date of Birth: MAY 30, 1998 |
| 7. Birthplace: CINCINNATI, OHIO | | |
| 8a. Residence State: OHIO | 8b. County: HAMILTON | 8c. City or Town: CINCINNATI |
| 8d. Street Address and Zip Code: 1631 SPARKLE AVE 45237 | 9. Ever in US Armed Forces?: NO | |
| 10. Marital Status at Time of Death: NEVER MARRIED | 11. Surviving Spouse's Name: | |
| 12. Decedent's Education: ASSOCIATE DEGREE (E.G., AA, AS) | 13. Decedent of Hispanic Origin: NO | 14. Decedent's Race: BLACK |
| 15. Father's Name: KENNETH NELSON | 16. Mother's Name: DONNA WHITE | |
| 17a. Informant's Name: DONNA WHITE | 17b. Relationship to Decedent: MOTHER | 17c. Mailing Address: 6351 BEECHMONT AVE 210 CINCINNATI, OHIO 45230 |
| 18a. Place of Death: HOSPITAL - EMERGENCY ROOM / OUTPATIENT | | |
| 18b. Facility Name: ADENA REGIONAL MEDICAL CENTER | 18c. City or Town, State and Zip Code: CHILLICOTHE, OH 45601 | 18d. County of Death: ROSS |
| 19. Funeral Service Licensee or Other Agent: JUDITH E L ANTHONY | 20. License Number: 009681 | 21. Name and Complete Address of Funeral Facility: J C BATTLE & SONS INC 543 ROCKDALE AVE CINCINNATI, OH 45229 |
| 22. Method and Place of Disposition: CREMATION - GREATER CINCINNATI CREMATORY, CINCINNATI, OH | | |
| 23. Local Registrar: DEBBIE MINER | 24. Date Filed: JULY 31, 2024 | |
| 25a. Certifier: ☐ Certifying Physician ☒ Coroner or Medical Examiner | | |
| 25b. Time of Death: 00:56 | 25c. Date Pronounced Dead: JULY 23, 2024 | 25d. Was Case Referred to Medical Examiner or Coroner: YES |
| 25e. Certifier Name and Title: BENJAMIN TROTTER DO | 25f. License number: 34.011627 | 25g. Date Signed: SEPTEMBER 05, 2024 |
| 27. Name and Address of Person who Completed Cause of Death: BENJAMIN TROTTER, 217-A DELANO AVE, CHILLICOTHE, OH 45601 | | |

| 28. Part I. | | Approximate Interval Onset and Death |
|---|---|---|
| Immediate Cause (Final disease or condition resulting in death) | a. UNKNOWN | UNKNOWN |
| Sequentially list conditions, if any, leading to immediate cause. | b. Due to (or as Consequence of): | |
| Enter Underlying Cause (Disease or injury that initiated events resulting in death) | c. Due to (or as Consequence of): | |
| | d. Due to (or as Consequence of): | |

| | | |
|---|---|---|
| Part II. Other significant conditions contributing to death but not resulting in the underlying cause given in Part I | 29a. Was An Autopsy Performed?: YES | 29b. Were Autopsy Findings Available Prior To Completion Of Cause of Death?: YES |
| 30. Did Tobacco Use Contribute to Death?: UNKNOWN | 31. If Female, Pregnancy Status: NOT APPLICABLE | 32. Manner of Death: COULD NOT BE DETERMINED |
| 33a. Date of Injury: | 33b. Time of Injury: | 33c. Place of Injury: |
| 33d. Injury at Work?: | 33e. Location of Injury: | |
| 33f. Describe How Injury Occurred: | 33g. If Transportation Injury, Specify: | |

* Certifier has filed updated information regarding the Cause of Death.

# EXHIBIT #2. Plaintiff Authority of Estate

KMC

**PROBATE COURT OF HAMILTON COUNTY, OHIO**
**RALPH WINKLER, JUDGE**

ESTATE OF [illegible], DECEASED

CASE NO. 2025003296

## APPLICATION TO RELEASE MEDICAL RECORDS AND MEDICAL BILLING RECORDS

[R.C. 2113.032]

Now comes Donna White (Applicant's Name) the Mother (Relationship) of the above named decedent who died on July 23, 2024 and resided at [illegible], Cinti, OH [illegible], whose last four (4) digits of his/her social security number are [illegible], and hereby requests authority to obtain information regarding decedent's medical records and medical billing records for the purpose of evaluating a potential wrongful death, personal injury, or survivorship action on behalf of the decedent.

Applicant states the following:

☑ Applicant is an individual who is eligible to be appointed as a personal representative of the above-named decedent's estate under Ohio law; or

☐ Applicant is named as executor in the above-named decedent's will, and Applicant has filed a copy of decedent's will with this Application.

Applicant has attached Form 1.0 – Surviving Spouse, Children, Next of Kin, Legatees and Devisees.

Applicant acknowledges that an order shall not be issued until ten days following the probate court's transmission of a copy of this application to those persons listed on the Form 1.0 who have not filed a signed Waiver of Notice/Consent.

| | |
|---|---|
| Attorney's Signature | Applicant's Signature |
| Typed or Printed Name | Donna White<br>Typed or Printed Name |
| Address | 5604 Kingsway CT<br>Address |
| 8 Sept 25<br>City, State, Zip Code | Cinti, OH 45215<br>City, State, Zip Code |
| Phone Number | 513 [illegible] 9448<br>Phone Number |

Attorney Registration No. [illegible]

FORM 35.0 - APPLICATION TO RELEASE MEDICAL RECORDS AND MEDICAL BILLING RECORDS [illegible]

[illegible] 23.0 Pg 1 of 1

Exhibit #3

Declaration of Donna White – Rebuttal to Ross Correctional Institution's Objections

I, Donna White, declare under penalty of perjury:

1. Identity and Purpose

I am the mother of Dennis Nelson, who died while in custody at Ross Correctional Institution. I submit this affidavit to rebut the objections raised by Ross Correctional Institution regarding my public records requests, the concealment of surveillance footage, and procedural misconduct surrounding Dennis's death.

2. Obstruction of Surveillance Footage

Ross Correctional Institution has claimed that releasing unredacted footage would compromise facility security. This justification is unfounded and misleading. The footage in question pertains to the final hours of my son's life and is critical to understanding the circumstances of his death. The refusal to release this footage obstructs transparency and accountability.

- The footage received was heavily redacted or missing entirely during key timeframes (July 7–23, 2024).

- The claim of "security breach" is a pretext to conceal misconduct, not a legitimate exemption under Ohio's public records law.

- A Special Master ruling already compelled partial disclosure, confirming the footage is subject to release.

3. Refusal to Acknowledge Legal Correspondence

Ross Correctional Institution has repeatedly refused to sign for legal packages I sent, including affidavits, FOIA escalation letters, and evidence submissions.

- This refusal violates standard administrative protocol and obstructs my ability to pursue legal remedies.

- It demonstrates a pattern of avoidance and non-cooperation that undermines public trust and due process.

4. Failure to Report Death per Ohio Procedures

Dennis's death was not reported in accordance with Ohio Department of Rehabilitation and Correction procedures.

- There was no timely public notification, no internal incident report released, and no documentation provided to next of kin as required.

- The coroner's office was delayed in its response, and medical records contain timeline discrepancies that raise serious concerns.

- Witnesses and inmates have testified to abuse and retaliation in the days leading up to Dennis's death, which were never investigated or documented by the institution.

5. Conclusion and Declaration

The objections raised by Ross Correctional Institution are not only legally insufficient—they are morally indefensible. I remain committed to exposing the truth, securing justice for Dennis, and protecting other families from institutional abuse.

6. Body Cam Footage – Evidence of Staging and Misconduct

The body cam footage obtained through public records requests reveals behavior that is not only inconsistent with protocol but indicative of deliberate staging. The video captures:

- Coordinated movements and scripted dialogue among staff that appear rehearsed rather than spontaneous.

- Delays in medical response and lack of urgency despite visible signs of distress.

- Manipulation of the scene, including repositioning of Dennis's body and selective camera angles.

- Contradictions between what is shown on video and what is documented in incident reports and medical records.

This footage, in its raw form, exposes a calculated effort to control the narrative surrounding Dennis's death. The institution's claim that releasing the full, unredacted footage would compromise security is a diversion tactic. What it truly compromises are their ability to maintain a false account.

7. Direct Observations from Body Cam Footage – Evidence of Staging, Neglect, and Tampering

The body cam footage obtained through public records requests reveals a disturbing sequence of events that directly contradict the institution's official account and exposes deliberate staging and concealment:

- Officers approached the cell with the door closed saying "yep, that's him" without seeing his physical body, and they approached the cell with a large can of pepper spray, proving they had been pepper spraying Dennis for days.

- Inmate Testimony Captured on Video:

Multiple inmates can be heard yelling, "They killed him," confirming that Dennis's death was witnessed and recognized as unnatural and preventable.

- Dragging of Dennis's Body:

Officers are told and seen dragging Dennis's lifeless body out of the cell, and told by the leading Officer to roll him over and place handcuffs on him, rather than initiating any emergency medical protocol. This act alone demonstrates a disregard for life and procedure and them knowing Dennis was already deceased.

- Staged Medical Response:

Instead of performing life-saving measures, officers injected Dennis's corpse with three cans of Narcan, despite the fact that he had been in a holding cell from July 7 to July 23 with no access to drugs. The use of Narcan was clearly a post-mortem cover-up intended to fabricate a drug-related emergency.

- Officer Admissions and Behavior:

One officer is heard saying, "If we take him to another hospital, they're going to question us," followed by a thumbs-up gesture, signaling mutual understanding and concealment.

Another officer states, "Let me cut this f---ing body camera off," confirming intent to obstruct documentation. He also confirmed on the phone with another staff, possibly the Warden. He said Dennis was dead as a hammer, and he confirmed that it took EMS took 20 minutes to arrive. This is proof that Dennis passed away at Ross Correctional Institution.

The defibrillator used by the Officers and Medical staffs confirmed there was no active pulse

- EMS Delay and Tampering with a Corpse:

EMS did not arrive until approximately 20 minutes later. During this time, EMS workers were seen pumping Dennis's chest without any medical equipment attached—no defibrillator, no oxygen, no vitals monitoring—just performative chest compressions in route to the ambulance.

- Lack of Urgency and Coordination:

All personnel moved slowly and without urgency, further indicating that this was not a genuine emergency response but a staged act to staged his correct death date, resuscitation, and EMS hospital trip to mislead investigators and the public.

- Deprivation of Basic Needs:

Inmate witnesses confirmed that Dennis was deprived of water during his time in the holding cell, a violation of basic human rights and correctional standards. What it truly compromises are their ability to maintain a false account.

8. Reactive Staging Based on Public Exposure

In reviewing the body cam footage and correlating it with medical records, it is evident that Ross Correctional Institution attempted to reverse-engineer a narrative in response to my public disclosures.

- Prior to receiving the footage, I publicly shared that medical records indicated Dennis had been found with handcuffs on, and that medical staff had instructed officers to remove the cuffs during their response.

- In the footage, officers are seen placing handcuffs on Dennis's lifeless body, despite no indication that he was combative or conscious. This act appears to be a direct reaction to my social media posts, intended to create a false timeline to conceal the fact that Dennis was cuffed at the time of death.

- The attempt to stage this detail backfired, as the footage clearly shows Dennis was already deceased when the cuffs were applied, and officers were coordinating their actions based on external scrutiny, not emergency protocol.

This reactive behavior confirms that the institution was monitoring public statements and altering their conduct to fit a narrative—rather than responding to a medical emergency with integrity. It further supports the claim that Dennis's death was not only mishandled, but deliberately staged to mislead investigators and the public.

9. Communications with Montgomery County Coroner, Ross County Coroner and Investigators – Evidence of Procedural Failure and Evasion.

I received multiple emails from the Montgomery County Coroner's Office and affiliated investigators that reveal serious inconsistencies, delays, and omissions in the handling of Dennis Nelson's death. These communications are attached as Exhibit H and include:

- Delayed Autopsy Confirmation:

The coroner's office failed to promptly confirm the date and time of autopsy, despite repeated requests. This delay obstructed my ability to verify the timeline and assess the integrity of the postmortem process.

- Contradictory Statements:

Emails from the investigator conflict with medical records and body cam footage. For example, the coroner's office referenced Narcan administration as part of the emergency response, yet Dennis had no access to drugs while in custody from July 7 to July 23. This contradiction supports the claim that Narcan was used postmortem as a cover-up.

- Refusal to Provide Chain-of-Custody Documentation:

Despite multiple requests, the coroner's office did not provide documentation showing when Dennis's body was transferred, received, or examined—raising serious concerns about tampering and timeline manipulation.

- Failure to Acknowledge Key Questions:

My inquiries regarding the presence of handcuffs, EMS arrival time, and medical intervention were ignored or deflected. This lack of transparency is consistent with broader institutional obstruction.

These communications demonstrate that the coroner's office and investigators failed to uphold their duty to provide timely, accurate, and complete information. Their evasive responses and contradictions further support the claim that Dennis's death was mishandled and concealed.

10. Fraudulent Documentation by Ross County Coroner's Office

The fraudulent signing and misrepresentation of Dennis Nelson's death originated from the Ross County Coroner's Office, not Montgomery County, which performed the actual autopsy. Ross County failed to follow proper death reporting procedures and submitted documentation that:

- Falsely recorded the date of death as July 23, 2024, despite evidence that Dennis died on or around July 13 during a facility lockdown.

- Did not include a timely incident report, public notification, or next-of-kin alert, violating Ohio Revised Code and ODRC policy.

- Signed off on death records without conducting an independent examination, relying instead on staged institutional accounts and delayed transfer of Dennis's body.

- Created a false paper trail that concealed the true timeline and obstructed my ability to obtain accurate records.

- Ross County Coroner Benjamin Trotter, signed Dennis final death certificate, this was fraudulently done, by signing the second page, and he was not the physician who performed the autopsy.

- I sent him an email questioning why did he sign Dennis Nelson's autopsy, when he was not the attending physician who performed the autopsy? He sent an updated autopsy with a fraudulent e-signature on the second page from the Montgomery County Corner who performed the autopsy.

Mike the Ross County Investigator, requested that I have family view the coroners/hospital photos with me, proving they knew the images were disturbing- it's a psychological cue that they were aware of the trauma the photos would cause. Having foreknowledge of abuse and visible evidence of harm.

Mike also became the spokes person for Montgomery County, when I reached out to them and sent an email asking them to preserve Dennis's Tissue blocks and histological specimens, Autopsy photographs and toxicology reports, DNA cards and related forensic documentation.

Montgomery County Coroner's Office, which performed the autopsy, was not responsible for the initial reporting or fraudulent signing. Their role was limited to post-transfer examination, and even their findings were delayed and vague due to the compromised condition of the body and lack of chain-of-custody documentation.

This distinction is critical: Ross County Coroner's Office is directly implicated in the concealment and falsification of Dennis's death records, and their actions form a central part of the institutional cover-up

11. Expanded Factual Allegation Paragraph

Between July 10 and July 23, 2024, Plaintiff Donna White made multiple calls to Ross Correctional Institution requesting wellness checks on her son, Dennis Nelson, after receiving alarming messages from inmates and Dennis. Despite these urgent requests, the institution's medical team and local sheriff's office refused to conduct any checks, relying solely on the facility's internal narrative. On or about July 13, 2024—the date Plaintiff alleges Dennis was murdered by correctional officers—officials continued to conceal his condition. During a recorded phone call, a member of the medical staff falsely claimed to have seen Dennis and stated he was "fine." When Plaintiff challenged this assertion, the staff member abruptly retracted her statement, saying "he's not my patient," yet remained on the call discussing Dennis for over 20 minutes. The sheriff, relying on Ross Correction's account, failed to independently verify Dennis's wellbeing.

When Plaintiff questioned Dennis's prolonged confinement in a holding cell, the Warden's secretary claimed he was being punished for "destroying the sink and toilet." However, medical records dated July 10, 2024, show Dennis had sustained blunt force trauma and OC (Oleoresin Capsicum) poisoning, consistent with physical assault and chemical exposure. The facility had turned off his water supply, and Dennis was reportedly attempting to revive himself. These facts, coupled with the institution's refusal to provide medical care and its misleading communications, demonstrate a deliberate effort to conceal Dennis's death, obstruct justice, and retaliate against Plaintiff's inquiries.

12. Request for Full Disclosure from Montgomery County Coroner's Office

I formally request that the Montgomery County Coroner's Office provide me with all documentation, communications, and records related to the autopsy and handling of Dennis White's body, including but not limited to:

- Full autopsy report and toxicology results
- Chain-of-custody documentation from transfer to Montgomery County
- Internal communications regarding Dennis's case
- Any supplemental notes, photographs, or procedural logs
- EMS records and hospital intake documentation, if applicable

Despite repeated inquiries, I have not received a complete set of records. This lack of transparency has obstructed my ability to verify the timeline, assess the integrity of the autopsy, and hold the responsible parties accountable.

I respectfully demand that Montgomery County comply with this request in full, without redaction or delay and to preserve Dennis Microscopic slides prepared from tissue samples.

- Tissue blocks and histological specimens
- Autopsy photographs and toxicology reports
- DNA cards and related forensic documentation

13.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on October 31, 2025.

/s/ Donna Marie White

Exhibit 4 – Declaration of Donna Marie White

Rebuttal to Ross Correctional Institution's Motion to Stay Proceedings (Ohio Court of Claims Case No. 2025-00474PQ)

Declaration Text:

I, Donna Marie White, declare under penalty of perjury that the attached document is a true and correct copy of the Motion to Stay Proceedings filed by Ross Correctional Institution and the Ohio Department of Rehabilitation and Correction in the Ohio Court of Claims, Case No. 2025-00474PQ.

This motion was filed after the Court ordered Respondents to release unredacted video footage related to the death of my son, Dennis J. Nelson Jr. The Respondents are now seeking to delay compliance with that order, despite the urgency and importance of the evidence.

Their request to stay proceedings and avoid enforcement of the judgment reflects a continued pattern of obstruction, concealment, and refusal to comply with lawful directives. This behavior supports my federal claims of due process violations, conspiracy to cover up wrongful death, and obstruction of justice.

A FOIA or public records request isn't a debate. It's a legal obligation. What Ross Correctional Institution is delaying, redacting, and resisting. This isn't just bureaucratic foot-dragging; they are obstructing and concealing Justice.

Executed on October 31, 2025.

/s/ Donna Marie White Pro Se Plaintiff 5604 Kingsway Court Cincinnati, Ohio 45215
donnawhite@consultant.com